We will wait for everybody to get settled and then Mr. Goodson, whenever you're ready. Thank you. Your Honor, ready? Yes. May it please the Court, my name is Don Goodson and I represent Plaintiff Appellant Tyrone Walker. Your Honors, the issue before the Court today is straightforward. When construing all of the evidence and reasonable inferences in Mr. Walker's favor, do the admissible materials make it arguable that his claim has merit? For multiple reasons, the answer is yes, but three merit highlighting today. First, for over five years, defendants provided virtually identical justifications for Mr. Walker's continued solitary confinement and relied on long past misconduct in doing so. Second, defendants frequently and often delayed in providing the reports to Mr. Walker so that he could respond to them before the next review period, as he was entitled to do. And third, during this time— Is it a problem that they relied on long past conduct? I mean, the form that they filled out does call for an explanation of the reasons why he was originally confined to administrative segregation. And that obviously just requires you to talk about long past conduct, right? Well, that's correct, Your Honor. If you look at the facility reports, the first section, as I think both sides agree, was static because it was historical. It merely recounted the reasons supporting the initial placement in administrative segregation. Mr. Walker doesn't contend that that should have changed over time. That remains said because it was merely recounting the reasons why he was initially placed in administrative segregation. But Mr. Walker's main point about the static justifications of the reasoning focuses on the third section, which even the defendants agree recounted the reasons why he needed to remain in solitary confinement. Those justifications were repeated virtually verbatim for years on end. And not only were they copied and pasted from one report to the next, they relied on Mr. Walker's extreme acts of violence, which occurred in 2000, or his criminal history, which occurred before 2000. Is it possible that a committee would have decided, well, there were strong reasons for putting him into administrative segregation to begin with, and we don't think that the subsequent developments have overcome those reasons because he still displays those characteristics? Well, Your Honor, that reasoning could potentially have assuaged this Court's concern, but the reasoning Your Honor just recounted does not appear in the facility reports. Well, why is that the way we should read the forms, right? So if it says – well, actually in the second form they said, well, he was – he acted appropriately in the interview and he's done some things in administrative segregation. And then the third section essentially says, but we don't think that that overcomes the idea that he has these behavioral problems. I mean why isn't that the way to read it? So generally when we read agency decisions, we assume that the agency has considered all the evidence before unless the record compellingly suggests otherwise. I mean is there a reason to think besides just the way they filled out the form itself that they didn't consider his conduct subsequent to the original reasons why he was confined? Well, Your Honor, it's for the very reason this Court gave in Proctor v. Leclerc. There the Court said that years of virtually identical reports could suggest to a reasonable jury that the reviewers treated the process as satisfied by boilerplate explanations instead of a forthright review. But in that case, the record did compellingly suggest that they had not considered all of the evidence before them because they said, well, there's nothing that could change my mind and there's just no way that he's ever getting out of administrative segregation. There's nothing like that here, right? Well, Your Honor, it is correct that the evidence in Proctor differs from the evidence here. But Mr. Walker has still nonetheless pointed to evidence from which a reasonable jury could find that his reviews were not meaningful. Now to the extent that Your Honor is looking for statements, for example, from defendants themselves suggesting that they had reached a preordained conclusion. As Mr. Walker noted, he testified under oath that defendants Woodruff and defendant Cook told him that they would never recommend his release from administrative segregation. In addition, as Mr. Walker also pointed out, although Proctor did include damaging deposition testimonies that this Court highlighted in its opinion, nothing in Proctor suggests that such smoking gun testimony is required. And multiple other courts have reversed or denied grants of summary judgment despite the absence— I guess maybe it's not the right standard. So like the thing I'm thinking of is when we review an agency adjudication, and maybe this is a different context. You can tell me if I'm applying the wrong standard. We say just because the agency adjudicator doesn't discuss every piece of evidence or put all of their reasoning in a decision, we don't assume that it means that they overlooked and didn't consider the evidence unless— the record compellingly suggests otherwise. There has to be a strong reason to think that the agency adjudicator is not looking at the evidence. So why shouldn't we apply that standard here so that unless there really is somebody who says—I guess now you're saying that there is because he reported it to Mr. Walker. So we can talk about that in a second. But is this the right standard unless there's a strong reason to think, something compelling in the record that suggests they did not look at the evidence, that we should assume that they did? Well, Your Honor, this court has already engaged in the Matthews v. Eldridge balancing to determine the process that is due and the standard that applies to assessing whether the reviewers provided a meaningful review. The court did that in proctor and set forth three criteria for a court to look at to determine whether the reviews were meaningful. The evidence that Mr. Walker has pointed to here could permit a reasonable jury to conclude that he did not receive meaningful reviews. And that's the touchstone of this inquiry because Mr. Walker is not arguing that defendants lose or that he wins. The question before the court is whether summary judgment was appropriate. And as Selby v. Caruso explained, that requires the reviewing court to look at the complete factual record and determine whether it is so one-sided that summary judgment was appropriate. Am I right in understanding that the nature of the liberty interest here has been recognized as significant, even in the context of confinement, to be in solitary confinement, particularly where it could be used inappropriately as a pretext for punishment rather than for other reasons, that the proctor recognizes and the subsequent statutory reform has recognized that, in light of that interest, that the prison authorities have an affirmative obligation to assess the changing record over time in a meaningful way. That's what meaningful review is. And therefore, isn't it appropriate to understand that to require an articulated assessment of the positive factors, for example, the absence of behavioral problems over a five-year period or the preceding six-month period or what have you, in some way that says we recognize that there have been infractions or there have been no infractions, that this is the fifth period without infractions and these programs have been completed and so on. Nonetheless, in spite of recognizing the importance of the complainant's interest, we think that the overall factors, the history of the circumstance and his sense of entitlement and what have you, still creates a need for him to remain in administrative segregation. So there's more of an affirmative obligation, unlike in the ordinary administrative law case where we might be talking about air quality standards. There's a personal liberty constitutional interest implicated that places more of a burden on the agency to articulate its reasons. That's my understanding of what we were talking about in Proctor and why it's particularly troubling here, even in the absence of testimony in which they said there's no way he was going to get out, that the reports weren't timely provided to him, why he was not allowed to point out that they relied on errors, about the drag lines or what have you, things that were subsequently withdrawn, and other things that undercut the sense that one could reasonably rely on the reports that were provided. So could you articulate a standard that is something more than presuming that they did what they were supposed to and that they reviewed and considered in a meaningful way all of the changing facts before them? Yes, Your Honor, and Your Honor, I see that I'm out of time. Let me respond. That's correct, Your Honor. This court addressed the very weighty liberty interest in Proctor, which is the same weighty liberty interest here. And it's worth emphasizing, we're talking about solitary confinement, not just for a few days or months, but for years on end, 21 years in solitary confinement, eight years in administrative segregation, solitary confinement. The court looked at that weighty liberty interest, and it said that the reviewing officials must provide meaningful reviews. And what does that mean? It means that they must involve real evaluations of the administrative justification for the confinement, consider all of the relevant evidence, good and bad, that bears on whether administrative justification remains valid, and ensure that ad sec is used as neither a form of punishment nor pretext for indefinite confinement. And if I may just give an example, Defendant Cook stated in her declaration that Mr. Walker was frequently abusive and frequently displayed negative behavior. She also stated she prepared the review forms 12 times. She stated that when she prepared those review forms, she included all necessary information bearing on the committee's review, including explanations of interactions other staff had with Mr. Walker and her own interactions. But none of the facility reports mentioned negative or abusive behavior from Mr. Walker. One would have assumed that that would have factored into at least the second section's discussion of his current behavior, but that it would also, to Your Honor's point, have factored into the third justification. For example, the facility committee easily could have said that despite Mr. Walker's relatively good behavior over the past 30 to 60 days, he displayed abusive or negative behavior to staff, and for that reason, we have concerns about whether his improved behavior is lasting. So is the failure, then, you think that they just – they were not doing a meaningful evaluation, or they didn't explain their reasonings in the report? Well, Your Honor, the latter point you just gave is indicia, or evidence, from which a reasonable jury could find that the reviews themselves were not meaningful. Could I ask – So does the case depend on that, finding that it's not meaningful? Or might it be that if they don't articulate their reasons sufficiently in the reports, that itself is a violation? You're focused on saying, well, they did not do a meaningful review, right? That's correct, Your Honor. I mean, at the end of the day, the touchstone of inquiry is meaningfulness, as this Court explained at Proctor, but also as the Supreme Court explained – but they did do a meaningful review. That would be a separate issue. That's like a different claim. Well, that would potentially be different, but again, I think it's worth pointing out that it's – what is the type of evidence from which a reasonable jury could conclude that the reviews were not meaningful? It's the boilerplate explanations. It's the reliance on long-past misconduct. It's the delays in providing Mr. Walker's reports to him for over a year, which prevented him from being able to respond to the justifications that have been offered, even though he was entitled to respond before the next 30-day review period. It's also – That's what I'm saying. So there are cases that we have where there are liberty interests at stake and property interests, right? We have immigration adjudications and social security adjudications and so on. We say that you don't have to parse every piece of evidence on the record in order to say that you've gotten a meaningful review that meets due process requirements. Well, so why wouldn't it be the case that the documentation itself in the forms is not compelling evidence that they didn't do a meaningful review? Well, Your Honor, as I sit here now, I'm not aware of the cases, and I'll just flag that defendants have not brought those cases to the court's attention or mine or has pointed to them as reasons why this court should depart from Proctor. It's also worth noting that this court was not alone. Proctor didn't say that there had to be something in reports, right? It just said you needed to do a meaningful review. Right. That's right, but then the court said in Proctor, what could a reasonable jury look at to determine whether the reviews had been meaningful? You could look at the damaging deposition testimony. You could look at the reports themselves and other evidence that would be relevant to a reasonable jury's assessment. And you would say that there are – that it was wrong to grant summary judgment because on this record, a jury could find that there was no meaningful review based on the fact that the reports looked cut and paste over years and years and years. Is that – That's correct, Your Honor, but again, Mr. Walker pointed to more than just the copying and pasting. He pointed to additional evidence, the delays. His long stretches of good behavior, which this court and others have noted is relevant, even though you cannot substantively appeal the decision. He also pointed to red flags in the reports and the declarations themselves and, as noted, statements from defendants themselves. And those were not – those observations were contested as a matter of fact, but the implications and the inferences that could be drawn from those are contested. We will hear from the State, but I'm just trying to figure out on a summary judgment standard where we stand as to what is disputed. But it's really the inferences to be drawn from the record at hand about whether there was a meaningful review. That's correct, Your Honor. If I understand Your Honor's question correctly, this is an unusual situation where I think most of the facts are not disputed. I think there's an agreement about the copying, the delays, the long stretches of good behavior, that these statements were made. But as Mr. Walker explained in his opening brief, meaningfulness, whether these reviews were meaningful, that is a question of fact, and that's the disputed question of fact is were these reviews meaningful, and that's the relevant question for the summary judgment inquiry is could a reasonable jury find that the reviews were not meaningful. That's the disputed question of fact. Can I ask you a question about qualified immunity? Yes, Your Honor. So I guess you would say that at least since Proctor, at least since 2017, I think that's when Proctor was decided, it's clearly established that you need to do a meaningful review. At the minimum, Your Honor, but as Mr. Walker also pointed out in his opening brief, the Sixth Circuit in Selby v. Caruso and the Seventh Circuit in Isby v. Brown held that the law was clearly established for purposes of a similar procedural due process claim after Hewitt in 1983. So Mr. Walker contends that the law was clearly established after 1983 and defendants did not need a case squarely uncoined to explain to them the error of their ways. It's also worth noting that it's not clear from defendants' opposition brief whether they contest that it was Hewitt that clearly established the law or Proctor. And as Your Honor has noted, in any event, let's assume for the sake of argument that Hewitt did not fully establish the law. It's hard to imagine a case more squarely uncoined than Proctor v. Leclerc, meaning that certainly after January 2017, there can be no reasonable argument that the law was not clearly established. Well, Proctor says you need to do a meaningful review, which is why I'm kind of getting at this question of whether it's the explanation in the reports or it's the actual meaningfulness of the review. But it didn't necessarily establish what you need to say in the reports. Well, Your Honor— You're saying that's just evidence of their lack of a meaningful review. Well, Your Honor, the Supreme Court in Help v. Pelzer stated that you do not need a case squarely uncoined to clearly establish the law for purposes of qualified immunity. But again, it's hard to imagine a case more squarely uncoined than Proctor. Similar factual allegations, similar legal standard. In fact, Mr. Proctor was in fact held at the same institution as Mr. Walker. So for purposes of the qualified immunity inquiry, Mr. Walker does not need to point to a case squarely uncoined, but it's hard to imagine a case more squarely uncoined for purposes of qualified immunity than Proctor. Now, Your Honor, if there are no further questions, I'd like to reserve the remainder of my time. Yes, thank you very much, Mr. Goodson. We'll hear from you again on rebuttal. Let's turn to the appellee, Mr. Kieran. May it please the Court. It was plaintiff's burden to put forth sufficient evidence of pretext, evidence that these reviews were perfunctory. Plaintiff failed to meet that burden, and therefore the district court properly granted summary judgment in this case. Now, plaintiff relies heavily on consistent reasoning across the 46 administrative segregation review reports. That's not indicative of... It's not just consistent reasoning. It's identical wording. In many cases, yes. It's identical wording. Correct? Yes. Well, isn't that potentially enough to draw an inference that nothing more was done? Because time passed, right? So the record changed in that there were, there weren't infractions. There were, there weren't problems. There, you know, programs were completed, programs were not completed, and so on. And yet the reports noted nothing and largely looked like they were cut and paste. The reports certainly included information about plaintiff's developments. Defendants also placed significant weight on events that occurred in the past, but this Court of Proctor held that there's nothing wrong with that. One would expect correction officers to look at events in the past, to look at why someone was placed... So I guess there's a concession that the first part of the report that talks about the reasons why he was put in administrative segregation, you do not expect to change. Right. The second part about his subsequent behavior and attitude did change, right? I guess they do talk about his behavior and subsequent occasions. But then, sorry, the third section, it says other factors which may favor retaining the inmate in or releasing the inmate from administrative segregation did seem to be pretty consistent. So how do we, how do we understand that? I mean, are they at least applying what's in the second section to their conclusion in the third section? The reasoning is consistent, but that's what you'd expect from prison officials who are acting in good faith. They have to evaluate the future risk posed by incarcerated individuals with extraordinarily violent pasts, and they're entitled to make the judgment based on... But once again, I have to interrupt. You say the reasoning is consistent, but what's striking is the exact wording is identical, which suggests no fresh reasoning. And maybe that's, you know, appropriate other than noting that, you know, time has passed and this happened or that didn't happen, but often even that kind of observation is missing, which is surprising and concerning if it's supposed to reflect a meaningful review. Don't you agree that the exact identical wording, reflecting the other factors consideration is a little surprising and maybe concerning? In some cases, for example, in Nkuma and Isby, cases that plaintiff relies on, there the boilerplate determinations were very short, two words or two sentences, and there really wasn't enough evidence suggesting that the defendants had undergone full reviews. But here you have hundreds of pages in the appendix reflecting the hard work that DOCS officials put into these reviews, and it's done at three levels, by the facility committee, by the central office committee, and by the deputy commissioners. Now, there was copying and pasting. That is true. But these are government officials. They have busy jobs. They have a lot of work to do. I guess your argument is, well, there were these strong reasons for him to go into administrative segregation because of a violent past, and so they look at his subsequent attitude, and they conclude that his subsequent behavior just doesn't overcome those original reasons. And I guess if that's your analysis, the reports are going to look pretty similar because you really are relying on the original reasons for putting him in and just saying that there isn't anything that has overcome those original reasons. And what would be more suggestive of pretext or meaningless reviews is if the rationales changed over time. But doesn't Walker also suggest that there were errors introduced into these reports that subsequent withdrawal of the assertions may suggest that they were recognized as errors? He wasn't given a chance to contest them, and it also suggests that there may have been an erroneous assessment based on those errors. He contests many of the facts in the reports. He submitted written submissions, and defendants responded to them. To the extent defendants removed those assertions, perhaps that reflects that they did recognize that they were incorrect after further investigation. But there's no real evidence in the record establishing that the assertions were incorrect. There's certainly no evidence suggesting that they were knowingly false assertions. Well, there's evidence in the record in the form of his testimony, right? I mean, that's evidence. That's true. That is the one piece of evidence here, his own deposition testimony, that defendants, I believe, Woodruff and Cook. Right. So I was talking about evidence of the errors. The Woodruff-Cook is the question I was going to ask about next. It seemed to me that wholly apart from repetition and cut and paste, one of the important facts in Proctor was that we had evidence that decision makers had essentially said their minds were fixed. And we have exactly that here. We have testimony that two different members of the facility committee said they would never recommend that he leave administrative segregation. Why isn't that on all fours with Proctor? In Proctor, you had deposition testimony from the defendants themselves, saying, for example, Proctor was never going to leave ADSEC because he had a deposition statement. So in other words, it's a source. I mean, if, in fact, this is admissible hearsay, then the only distinction might be how much value you place on that testimony or how much credibility you ascribe to it, which strikes me as very much the fact finder's role. Can we, on summary judgment, say, oh, his testimony about what they told me doesn't carry weight, but if we heard it directly from them, it would? No, Your Honor. Certainly not. Below, I'm not entirely sure whether Mr. Proctor clearly made this argument. He was representing himself. I'm not sure he pointed specifically to his own deposition. Right, but we're de novo reviewing. We're looking at this evidence. Of course. Of course. But it's not enough for a reasonable jury to find pretext here, not against the mountain of evidence that docks reason. When two of the decision makers say, doesn't matter what you put in front of me, I'm never going to recommend that you get out, is that that's not a pretty big fact on his side of the scale? I mean, he doesn't have to persuade us in this room. He just has to persuade us that he could persuade a jury reasonably. I think it's too thin a reed to stand upon. Obviously, if Your Honors disagree, then that's reason for reversal. But I think it's not enough in light of the evidence in the record. Plaintiff also points to a number of what he calls red flags. Those are not red flags here. In Proctor, you had inexplicable logic. You had bizarre and unsupported assertions. There's nothing like that here. Plaintiff points to some statements in the record. At the same time, you know, in Proctor, the problem was that there was nothing that the inmate could do to be released from administrative segregation. So I was saying a moment ago, you know, you could read these reports to suggest that the committee's determined that he just hadn't overcome the reasons for putting him in administrative segregation. But couldn't you also read them to suggest that they just were determined to keep him there and there was nothing he could do to get out? Like, what's the evidence that would allow a jury to conclude that he could have done something to be released from administrative segregation? Well, it's not necessarily the case that he could do anything specifically to get out of administrative segregation. The question before Dock's each and every review period was whether he posed a sufficient risk to institutional safety and security that he had to remain in administrative segregation. Dock's was entitled to look at his past conduct, his extraordinarily violent attack in 2000, his violent history even before then, both within prisons and outside. So you're saying that Proctor tells us that the state has to look at the evidence and do a meaningful review, but it's quite possible they would conclude that somebody is just too violent to be released into the general population. Yes, yes. And as long as they reach that conclusion periodically, but they keep reaching the same conclusion, that would be okay. And this is just a procedural due process claim. But still, why isn't the question for the jury ultimately to look at the whole factual record and make that determination? It's not appropriate here. It's not reasonable to expect every prison official to go to trial every time he or she recommends administrative segregation. We're talking about a 20-year history or plus of this person who had committed horrible, horrible crimes. We're talking about what circumstances that person can get out and what kind of meaningful review he's entitled to under Proctor and under the Constitution. But still, he was in solitary for 20 years, and there was no violent episode since 2000, I think. And given the nature of the review process here and what we've said in Proctor, I'm not sure why it's enough for a jury to assess whether the review is meaningful. That isn't to say that he was entitled to be released, but what he's entitled to is a meaningful review. That's correct. But my clients believe that they did meaningfully review his status 46 times between 2014 and 2019 when the record in this case closed. What do we do with the reasoning that says, obviously if there's evidence of continuing violent behavior in this context, it's a no-brainer that that would be relevant evidence to consider. But it seems like the attitude we've seen in some of the evidence, at least as viewed in the light most favorable to the felon here, is that the absence of any evidence of violent misconduct or other things was deemed to be somewhere between not relevant at all because the reason he's not committing violent acts is because he's in administrative segregation to affirmative vindication of the decision to keep him in administrative segregation. That seems a little bit the funhouse reasoning that we looked at in Proctor as well, doesn't it? No. Here there are statements explaining that plaintiff generally behaved well while in administrative segregation, but also explaining that the restrictive environment really prevents incarcerated individuals from doing much damage. That's a reasonable inference, and it's different from— There was plenty of evidence during his first phase of segregation when he was disciplinary in segregation. There was evidence of violations and things, wasn't there? There were some violations, no violent incidents, but there were misbehavior reports. In Proctor, it was a slightly different statement. It was a statement that plaintiff's positive behavior and attitude with staff made him a high-profile security concern, and that's why the court observed that docs essentially used Proctor's positive behavior not as a factor weighing in favor of release, but as a reason to keep him in administrative segregation. We have nothing along those lines here. And what about the delays in providing him the reports? Doesn't that impair the claim that he got meaningful review? He was unable then to rebut or attack or know what he was being—the reasons he was continuing to be kept in administrative segregation. Doesn't that impair the notion that he got the process he was entitled to? No, Your Honor, for a few reasons. First, the delays were not attributable to the individual named defendants here, or at least there's no evidence of that attribution. Second, due process does not require docs to provide these reports to plaintiffs. But he's supposed to have a chance to comment and to—it's an informal adversary proceeding, but still he's supposed to be able to participate in some way. Yes. But if he doesn't have the reports, he doesn't know what he's responding to. He cannot respond to the—I understand that. He did have the opportunity to submit written materials to the committees, and he did that repeatedly. And defendants responded to those written submissions. But to the extent the reports were based on factual assertions that he thought were erroneous, he didn't have a chance to respond to them, even on the following—you know, the next up review. To the extent there were lengthy delays, for the most part these delays were not all that significant. He did receive the reports over time, except for one significant delay. I believe it was perhaps nine months or so. That was a significant delay. There's no evidence that plaintiff was ever prevented from responding to those reports, from making his own statements that defendants then considered, however. Contrast that with Proctor again, where one of the defendants testified that he disregarded evidence of Proctor's recent behavior. And there's nothing similar in this case to allow a reasonable jury to find in favor of plaintiff on his procedural due process claim. Okay. Thank you very much, Mr. Kiernan. We'll hear back from Mr. Goodson on rebuttal. Thank you. Mr. Goodson, can you explain—I'm sort of thinking through, because we're here—at this point, he's not in administrative segregation. So we're, I guess, here on a damages question, ultimately. How would one go about establishing damages for a procedural violation? Would you have to prove below that had he gotten the proper procedures, he would have been released earlier and then base your damages on that? What does that look like? So, Your Honor, if I may just first briefly touch on his current status. It is true that in mid to late March of this year, the State of New York's Department of Community Corrections and Supervision transferred Mr. Walker from solitary confinement at upstate to a step-down program at midstate farther south. But it's not entirely clear that the conditions of his confinement are meaningfully different. I know this is outside the record. Mr. Walker makes this point. But Mr. Walker just wants to be abundantly clear that he's not conceding that his status is meaningfully different. Even defendants recognize that he remains in administrative segregation status while he's in midstate. Isn't there a change in state law about the extent, the duration in which inmates can be held in administrative segregation? That's correct, Your Honor. Under the HALT Act, as defendants recognize in their opposition brief, it's 15 days or no more than, I believe, 20 days within a two-month period. Incidentally, the sponsor of the HALT Act has stated publicly in the press that she's not convinced that the Department of Corrections is following the HALT Act. Is there a claim here that the Department of Corrections is not following it and he is in administrative segregation? Well, the relevance here, Your Honor, for that is that Magistrate Judge Hummel concluded at the motion-to-dismiss stage that Mr. Walker asserts a claim for a continuing wrong. That claim continues to run as long as he remains in administrative segregation status and should have been entitled to solitary periodic reviews. So that's why it's relevant, Your Honor. But if I could return to Judge Robinson's question about the damages. So, Your Honor, this has not been briefed. It's not been addressed. It would have to be something that would be presumably addressed on remand. I'll just note that in looking at other cases where a similar claim has gone to trial, it appears that juries have attached a per-day dollar amount to the amount of time that the inmate was in solitary confinement but lacked meaningful periodic reviews. Again, I agree. So they don't have to do a trial within the trial to determine whether meaningful periodic reviews would have changed his status. They can assume that and then assign a – and then value the damages. If I recall from having looked at these cases where they've gone to trial, that appears to have been what occurred. But, Your Honor, to be perfectly frank, I assume that if this were to go back to a trial, there would be motion practice on this question and potentially argument before the jury. Right. No, I get that. I appreciate that. I just was trying to think it through. In the cases you described, the dollar per day is an estimate of how much damage somebody suffered from being held in administrative segregation without a meaningful review, not necessarily that they would have been released. Correct, Your Honor, because, of course, it's – the question is the process, not whether, in fact, if the process had been provided, it would be a transfer to general population. Now, Your Honor, if I may – And what is the harm? The harm is like uncertainty, like the emotional distress from the uncertainty of being held in administrative segregation without knowing whether you might have gotten out if there were a meaningful review? Potentially, Your Honor. I mean, again, I would imagine that it might vary by the circumstances. Perhaps if you had very compelling evidence that the inmate would have been released had he received a meaningful review, it might be a different inquiry than if it was a different situation. If I may just briefly respond to two points that my adversary raised. The first I just wanted to flag is that the defendants continue to misread this Court's opinion in Proctor. As Mr. Walker explained in his reply brief, there were two rationales related to the good behavior of Mr. Proctor in solitary confinement. One was that members of the Facility Committee actually pointed to his good behavior as a security risk. The Court said that's odd because that same good behavior served as a reason to shorten the length of his disciplinary segregation. Separately, the Court noted that the defendants who were not on the Facility Committee attributed Mr. Proctor's good behavior to his close supervision in solitary confinement. Those are two different rationales. Mr. Walker pointed to the second one, and the Court explained that second one is patently circular. The Court didn't do that just in Proctor. In the summary order when the Court reversed – affirmed the denial of a preliminary injunction motion, the Court pointed to similar evidence attributing an inmate's good behavior to close supervision as patently circular. We have all of these cases, though, that talk about deferring to the expertise of prison officials. It's not just us. Supreme Court has said that too in the administration of prisons. If the prison officials make a determination that actually somebody's behavioral characteristics haven't changed because they still display aggressive behavior, and so we think that the lack of violent incidents is due to the constraints on the person's behavior in administrative segregation. Why isn't that an – like the legitimate determination? Like why should we second-guess that determination? So, Your Honor, Mr. – as this Court explained in Proctor v. Leclerc, prison officials are entitled to substantial deference in carrying out their daily duties. And procedural due process claims do not permit an appeal of the substance of the decision. And, in fact, the Court has said prison officials would be entitled to substantial deference to the substantive decision to keep an inmate in solitary confinement even for incredibly long stretches of time. But to be entitled to that deference – I didn't want to get really into the deference question. I'm just sort of saying you're saying it's a problem if they say, well, he hasn't committed violence, but that's because he's in administrative segregation. But there's a little bit of a more subtle analysis going on because they do talk about him displaying a propensity for assaultive and dangerous behavior and so on. And so if they, in fact, are determining that actually his behavioral characteristics have not changed because we do observe him making hostile statements or whatever in administrative segregation. And so based on these observations, we think the reason for the lack of violent incidents is because of the constraints of administrative segregation. Why isn't that a legitimate point? Well, that's not an obviously absurd conclusion to draw, is it? It's just because, Your Honor, for the reasons this Court stated in both Proctor v. Leclerc and in H. Shocker 1 or H. Shocker v. O'Gorman, that type of reasoning suggests that there was really nothing the inmate could do to demonstrate that his improved behavior was lasting. Well, there was. I mean, at least the way I just articulated it. Maybe you dispute that that's what you can read into these reports, but the way I articulated it was based on our observation of his behavior, we still think that he is hostile and has this propensity for violence. So we therefore conclude the reason there hasn't been a violent incident is just because of the constraints on his behavior in administrative segregation. That wouldn't preclude the possibility that somebody might observe a real change in somebody's character or behavior. Well, I think there's at least two responses here. At least on the facts here, I think as Judge Robinson pointed out, and as Mr. Walker noted in both his opening and reply brief, the observation is not supported by the facts here because Mr. Walker incurred 10 misbehavior reports in the first roughly 12 years of his incarceration or his solitary confinement under virtually identically closed supervision. He then incurred only two misbehavior reports from 2012 to 2019. That demonstrates improved behavior, not merely that closed supervision can explain his improved behavior. And coming at it at a slightly different angle, Your Honor, a lot of these questions are about what can you infer from the evidence. But of course, all reasonable inferences must be construed in Mr. Walker's favor on a motion for summary judgment. So, Your Honors, if there are no further questions, Mr. Walker respectfully requests that the Court reverse and remand for further proceedings. Okay, thank you very much, Mr. Goodson. The case is submitted. Will your argument